# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

KENNETH RAY MARTIN,

              Petitioner,

       v.

MICHAEL STAINER, Warden,

              Respondent.

Case No. CV 11-7937-JEM

MEMORANDUM OPINION AND ORDER
DENYING PETITION FOR WRIT OF
HABEAS CORPUS

## PROCEEDINGS

On September 26, 2011, Kenneth Ray Martin ("Petitioner"), a prisoner in state custody, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254 ("Petition").  On December 13, 2011, Respondent filed a Motion to Dismiss the Petition as untimely.  On January 24, 2012, Petitioner filed an Opposition, in which he made an argument for equitable tolling.  On February 14, 2012, the Court issued an Order advising the parties that the Motion to Dismiss had been taken under submission and ordering Respondent to file an Answer.  On May 14, 2012, Respondent filed an Answer.  On July 30, 2012, Petitioner filed a Reply.  The parties have consented to proceed before the Magistrate Judge.

The matter is ready for decision.  For the reasons set forth below, the Court concludes that the Petition should be denied and the case dismissed with prejudice.[1]

## BACKGROUND

Following a jury trial in Los Angeles County Superior Court, Petitioner was convicted of first degree burglary (Cal. Penal Code § 459),[2] assault with intent to commit rape during the commission of a burglary (§ 220(b)), attempted murder (§§ 664/187), making a criminal threat (§ 422), and assault with intent to commit rape (§ 220(a)).  The jury also found true allegations that Petitioner had suffered a prior strike conviction (§§ 667(b)-(i), 1170.12(a)) and inflicted great bodily injury in committing the assault and attempted murder (§§ 12022.7, 12022.8).  The trial court sentenced Petitioner to state prison for a term of life plus twenty-six years.  (Respondent's Lodged Document ("LD") A, Clerk's Transcript ("CT") at 183-87.)

Petitioner appealed his conviction.  (LD 2-4.)  On March 9, 2010, the California Court of Appeal modified the judgment of conviction to strike a lesser included offense and to reflect additional credit for time spent in custody.  The judgment was affirmed, as modified. (LD 5.)

Petitioner filed a petition for review in the California Supreme Court (LD 6), which was denied on June 23, 2010.  (LD 7.)

Petitioner filed the instant Petition on September 26, 2011.

---

[1]  Respondent has filed a Motion to Dismiss the Petition as untimely.  In opposition, Petitioner has raised complicated issues of equitable tolling.  For the reasons discussed herein, Petitioner's claims for federal habeas relief are subject to straightforward resolution on the merits on the existing record and under the deferential AEDPA standard of review.  Accordingly, the Court exercises its discretion to address and decide the claims on the merits.  See Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (district court may address merits without reaching procedural issues where the interests of judicial economy are best served by doing so).

[2]  All further statutory references are to the California Penal Code, unless otherwise stated.

### SUMMARY OF EVIDENCE AT TRIAL

On July 27, 2007, Janeth Z., a student a California State University Northridge, was moving from her apartment.  Janeth was waiting for her boyfriend Jaime Carranza and her cousin Jesse Martinez to arrive and help her move some of her belongings.  (LD B, Reporter's Transcript Vol. 3 ("3RT") at 624-25.)

While she waited, Janeth began taking some miscellaneous items out to her car.  Her car was parked in the alley, just outside the security gate to the complex.  The lock on the gate frequently was broken, and it was that day.  (3RT at 631.)

On one of her trips to the car, Janeth saw Petitioner sitting in the alley near the trash bins.  (3RT at 625.)  He was wearing headphones and appeared to be listening to music. (3RT at 625-26.)  He was outside the gate that led into the apartment complex.  (3RT at 631.)  When Janeth went back out, this time carrying a television set, Petitioner opened the gate for her.  She went back to the apartment to gather up some more items.  (3RT at 632.)

When Janeth came out with another load, Petitioner was no longer next to the trash bins.  Janeth eventually spotted Petitioner sitting inside the building on an interior stairway leading to the second floor of the building, about thirty steps from her apartment.  (3RT at 633.)  When Janeth returned from the car, Petitioner asked her if she needed help.  She said, "No, thank you," and continued to her apartment.  (3RT at 626.)

On her next trip to the car, Janeth noticed that Petitioner was no longer sitting on the stairs.  (3RT at 626, 634.)  Petitioner had secreted himself in a small alcove in the hallway where he could not be seen from Janeth's apartment door.  (CT at 85.)

Carranza called Janeth from his car to let her know he and Martinez were just leaving the freeway and would be there soon.  Janeth told him she still had some items to move and would move the small things while she waited for him.  She asked him to call when he and Martinez arrived at her building.  (3RT at 697.)  Janeth put some more things into her car. Carranza called to tell her they had arrived and parked up on the hill.  She told him to move the car around to the alley side, closer to the building entrance, so they would not have to

3

carry things so far.  (3RT at 697.)  Janeth told Carranza he would be able to come through the gate because it was open.  (3RT at 697.)

Janeth returned to the apartment and began to close the door behind her.  As she did so, Petitioner shoved the door open from the other side, came into the apartment, and locked the door behind him.  He grabbed her by both arms, just below the shoulder (3RT at 635-36), and shoved her.  Janeth said, "Please don't do this.  My boyfriend is on his way. Don't do this.  Please."  (3RT at 627, 656.)  Petitioner said, "Shut up, bitch."  (3RT at 627, 657.)  Janeth said, "Please stop," and screamed "Help!"  Petitioner said repeatedly, "shut up, bitch, or I am going to kill you.  I will kill you.  Shut up."  (3RT at 627; see also 3RT at 658.)

Janeth struggled and fought back.  (3RT at 636.)  Petitioner said, "Let's go to the room," and started to push her toward the bedroom door.  Janeth said, "no, please no." (3RT at 627.)  She started screaming.  Petitioner said, "Shut up, bitch."  (3RT at 657.)  She fell backward onto her elbow, and Petitioner fell on top of her.  (3RT at 658.)  He was still saying "let's go to the room."  To avoid going into the bedroom, Janeth told Petitioner her leg was hurt and she could not walk.  Petitioner told her to take off her pants.  (3RT at 660-61.)

Janeth was flat on her back, and Petitioner was above her, straddling her, with his legs on either side of her body, below her waist.  He tried to unbutton her pants.  She was screaming.  Petitioner hit her and told her to shut up.  He held her down with one hand on her chest just below her collarbone, and tried to unbutton her jeans with the other hand.  His entire weight was on her.  Petitioner could not unfasten the button because Janeth's jeans were too tight.  (3RT at 661-63.)  He hit her in the face with his fist.  (3RT at 664.)  He hit her on the nose.  She felt warm blood all over her face and eyes and could not see.  (3RT at 669.)

Janeth flipped over onto her stomach.  Petitioner put his arm around her neck from the back, and began strangling her in a chokehold.  The pressure on her throat increased. She could not breath and was afraid she was going to die, so she finally unbuttoned her

1  own jeans.  (3RT at 665-66.)  One side of her face was against the floor, and she was

2  looking out the large living room window.  Petitioner pulled her pants down and began hitting

3  her on the side of the face.  (3RT at 668.)

4       Carranza and Martinez parked in the alley and walked to Janeth's apartment.

5  Approximately two or three minutes had passed since they called her.  Carranza knocked

6  on the apartment door, but there was no answer.  He knocked again and heard sounds as if

7  "there was a struggle" coming from the interior.  It sounded like "some kind of ruckus."  He

8  could hear Janeth's voice; it sounded like "she was choking on something."  (3RT at 697,

9  699.)

10       Janeth heard a knock at the door, turned her face toward it, and screamed, "Open

11  the door, Jaime!"  (3RT at 669-70.)

12       Carranza and Martinez took turns kicking the door.  On the third try, the door frame

13  shattered and the door swung open.  (3RT at 698.)  Carranza saw Janeth "laid out on her

14  stomach with a gentleman on top of her and he had his arm around her neck."  Her face

15  was red and scratched and "real bloody."  She looked "very scared."  (3RT at 700-01.)

16  Petitioner pushed himself off Janeth and ran for the door.  Carranza grabbed Petitioner,

17  they fell back into the apartment, and there was a brief scuffle.  Petitioner's pants were

18  down halfway to his thighs.  (3RT at 701-02.)

19       Janeth was on the floor, bleeding.  (3RT at 707.)  Martinez grabbed her and took her

20  out into the hallway.  There was a lot of blood coming from her nose and she was crying.

21  (3RT at 712.)  Martinez got a towel and put it around her to cover her up.  Her pants were

22  down halfway to her knees.  (3RT at 671, 709-10.)  Martinez then returned to the apartment

23  to help Carranza subdue Petitioner.  (3RT at 709-10.)

24       Janeth called 911.  She told the operator that someone had tried to raper her, he had

25  pulled her pants down, she was injured, the assailant was still in her apartment, and her

26  boyfriend was holding down the assailant.  (CT at 78-80.)

27       Officer Hartmann arrived and saw Janeth sitting outside her apartment.  She was

28  crying hysterically.  Her hands were covering her face.  (4RT at 926, 928.)  Officer

1  Hartmann went to the apartment and found Carranza on top of Petitioner, who was face

2  down on the floor.  The officer handcuffed Petitioner and waited for additional responders.

3  (4RT at 929-30.)

4       Petitioner asked Officer Hartmann if it was legal for Carranza and Martinez to beat

5  him.  Officer Hartmann asked Petitioner what he meant.  Petitioner gestured toward a

6  broken piece of wood from the doorframe and said, "the guy tried to beat me with that."

7  When Officer Hartmann asked him why, Petitioner responded, "Because I was trying to fuck

8  the shit out of that girl."  (4RT at 932.)

9       Paramedics transported Janeth to the hospital, where she was treated in the

10 emergency room.  (3RT at 674.)  Her arm was sprained and her nose was fractured.  (3RT

11 at 675.)  There were bruises on her hip and legs, bruises and scratches on her arms, and

12 redness and bruising on her neck.  Her ear was red and bloody, and her mouth was

13 swollen.  (3RT at 637-40.)  She was released later that day and advised to contact her

14 personal physician to arrange for surgery to repair her nose.  (3RT at 675.)

15      That same day, Petitioner was interviewed by Detective Doerbecker of the Los

16 Angeles Police Department.  (4RT at 939.)  During the interview, Petitioner admitted that he

17 ran into Janeth's apartment and pushed her down.  (CT at 85.)  He admitted that he tackled

18 her, punched her in the face "seven or eight times," and choked her.  (CT at 87, 92.)  He

19 intentionally pulled her pants down.  (CT at 85, 88.)  He stated that he intended "just to pull

20 her pants down . . . [a]nd fuck her."  (CT at 86.)

21      Petitioner did not testify and presented no affirmative evidence in his defense.

22

23

24

25

26

27

28

**PETITIONER'S CONTENTIONS**

1.      The evidence was insufficient to establish that Petitioner committed attempted murder.  (Pet. at 5; Attachment at 1-5.)

2.      Defense counsel was ineffective for conceding that Petitioner was guilty of attempted murder.  (Pet. at 5; Attachment at 5-6.)

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the Court's consideration of Petitioner's cognizable federal claims.  28 U.S.C. § 2254(d), as amended by AEDPA, states:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim – (1) resulted in a decision that was contrary to,
> or involved an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or (2) resulted in a
> decision that was based on an unreasonable determination of the facts in light
> of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court held that a state court's decision can be contrary to federal law if it either (1) fails to apply the correct controlling authority, or (2) applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result.  Id. at 405-06.  A state court's decision can involve an unreasonable application of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  Id. at 407-08.  The Supreme Court has admonished courts against equating the term "unreasonable application" with "clear error."  "These two standards . . . are not the same.  The gloss of clear error fails to give proper deference to state courts by conflating

1  error (even clear error) with unreasonableness." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75

2  (2003).  Instead, in this context, habeas relief may issue only if the state court's application

3  of federal law was "objectively unreasonable."  <u>Id.</u>  "A state court's determination that a

4  claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

5  disagree' on the correctness of the state court's decision."  <u>Harrington v. Richter</u>, __ U.S.

6  __, __, 131 S. Ct. 770, 786 (2011).

7          Under AEDPA, the "clearly established Federal law" that controls federal habeas

8  review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court

9  decisions "as of the time of the relevant state-court decision."  <u>Williams</u>, 529 U.S. at 412 ("§

10  2254(d)(i) restricts the source of clearly established law to this Court's jurisprudence");

11  <u>Andrade</u>, 531 U.S. at 71.  If there is no Supreme Court precedent that controls a legal issue

12  raised by a habeas petitioner in state court, the state court's decision cannot be contrary to,

13  or an unreasonable application of, clearly established federal law.  <u>Wright v. Van Patten</u>,

14  552 U.S. 120, 125-26 (2008) (per curiam); <u>see also</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 76-77

15  (2006).  A state court need not cite or even be aware of the controlling Supreme Court

16  cases, "so long as neither the reasoning nor the result of the state-court decision contradicts

17  them."  <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam); <u>see also</u> <u>Bell v. Cone</u>, 543 U.S.

18  447, 455 (2005) (per curiam).

19          Petitioner raised Grounds One and Two on direct appeal.  (LD 2.)  The California

20  Court of Appeal denied these claims on the merits in a reasoned decision and the California

21  Supreme Court denied them summarily.  (LD 5, 7.)  Thus, the Court looks through the

22  California Supreme Court's silent denial to the Court of Appeal's reasoned decision and

23  reviews that decision under the AEDPA standards.  <u>Ylst</u>, 501 U.S. at 803; <u>see</u> <u>Gill v. Ayers</u>,

24  342 F.3d 911, 917 n.5 (9th Cir. 2003) (the federal court looks through the unexplained

25  California Supreme Court decision to the last reasoned lower court decision to determine

26  the basis for the state court's judgment).

27

28

DISCUSSION

**PETITIONER IS NOT ENTITLED TO FEDERAL HABEAS RELIEF**

In Ground One, Petitioner challenges the sufficiency of the evidence supporting his attempted murder conviction.  He also alleges in Ground Two that his trial attorney was ineffective for conceding his guilt of attempted murder.  (Pet. at 5; Attachment at 1-6.)

**A.     California Court of Appeal Decision**

The California Court of Appeal addressed both claims in a combined discussion:

Appellant contends the evidence is insufficient to support his conviction for attempted murder.  He claims there is no evidence from which the jury could have found beyond a reasonable doubt that he intended to kill J.Z.  He also argues, by extension, that his trial attorney provided constitutionally ineffective assistance by conceding during closing argument that he was guilty of attempted murder.  We reject both claims.

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence-that is, evidence that is reasonable, credible, and of solid value-from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]  . . . [A] reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]  'This standard applies whether direct or circumstantial evidence is involved.' [Citation.]" (*People v. Avila* (2009) 46 Cal.4th 680, 701.)

"'[A]ttempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' [Citations.]" (*People v. Smith* (2005) 37 Cal.4th 733, 739.)  Intent to kill may be "inferred from the defendant's acts and the circumstances of the crime.  [Citation.]  'There is rarely direct evidence of a defendant's intent.  Such intent must usually be derived from all

1    the circumstances of the attempt, including the defendant's actions.  [Citation.] . . .

2    [Citation.]'"  (Id. at p. 741.)

3         Substantial evidence supports the jury finding that appellant intended to kill

4    J.Z. and was therefore guilty of attempted murder.  Appellant violently attacked J.Z.,

5    expressly threatened to kill her if she did not "shut up," then strangled her in a

6    chokehold when she did not do so.  Strangulation reflects a deliberate intent to kill.

7    (People v. Frank (1985) 38 Cal.3d 711, 733-734.)  Appellant's assertion that the

8    evidence essentially compels a finding that he only intended to rape J.Z. disregards

9    the applicable standard of review.

10        Appellant also fails to show that his trial attorney provided ineffective

11   assistance by conceding that he was guilty of attempted murder in his closing

12   argument.  To make such a showing, he would have to establish both deficient

13   performance and prejudice.  (Strickland v. Washington (1984) 466 U.S. 668, 687.)

14   Appellant fails to prevail on either prong.  It appears that counsel made a tactical

15   decision to concede appellant's guilt in an effort to gain credibility with the jury.  "It is

16   within the permissible range of tactics for defense counsel to candidly recognize the

17   weaknesses in the defense in closing argument.  [Citations.]"  (People v. Jones

18   (1991) 53 Cal.3d 1115, 1150.)  In conceding that appellant was guilty of attempted

19   murder, counsel stated, "let's be honest, that happened."  He then sought to

20   persuade the jury that appellant should be found not guilty of assault with intent to

21   commit rape during the commission of a burglary.  Because the evidence of

22   appellant's guilt was strong, it was reasonable for counsel to concede the issue in an

23   effort to convince the jury that he was not guilty of the more serious offense.  (People

24   v. Gurule (2002) 28 Cal.4th 557, 612.)  Moreover, in light of the evidence it is not

25   reasonably probable the jury would have found appellant not guilty of attempted

26   murder had counsel not conceded the issue.  His claim of ineffective assistance

27   accordingly fails.  (Strickland, supra, at p. 687.)

28   (LD 5 at 3.)

**B.      Sufficiency of the Evidence**

   **1.      Applicable Federal Law**

  The Due Process Clause of the Fourteenth Amendment guarantees that a criminal defendant may be convicted only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A habeas petitioner challenging the sufficiency of the evidence to support his state criminal conviction may obtain relief only if "it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979).

  A federal court collaterally reviewing a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original); see also Wright v. West, 505 U.S. 277, 296-97 (1992) (plurality opinion). The Jackson standard "looks to whether there is sufficient evidence which, if credited, could support the conviction." Schlup v. Delo, 513 U.S. 298, 330 (1995).

  Under Jackson, the jury resolves conflicts in testimony, weighs the evidence and draws inferences from basic facts. Jackson, 443 U.S. at 319. Schlup held that "under Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review." Schlup, 513 U.S. at 330; Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) (reviewing court must respect the exclusive province of the trier of fact to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts).

  A federal habeas court faced with a record supporting conflicting inferences "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

<u>Jackson</u>, 443 U.S. at 326; <u>see</u> <u>also</u> <u>West</u>, 505 U.S. at 296-97.  Furthermore,

"[c]ircumstantial evidence and reasonable inferences drawn from it may properly form the

basis of a conviction."  <u>Schad v. Ryan</u>, 595 F.3d 907, 917 (9th Cir. 2010).

      The California Supreme Court has held that the California standard for determining

the sufficiency of the evidence to support a conviction is identical to the federal standard

enunciated by the United States Supreme Court in <u>Jackson v. Virginia</u>.  <u>People v. Johnson</u>,

26 Cal.3d 557, 576 (1980).  Thus, a federal habeas petitioner faces a "heavy burden" when

challenging the sufficiency of the evidence for a state court conviction.  <u>Juan H. v. Allen</u>, 408

F.3d 1262, 1274 (9th Cir. 2005).  Indeed, where, as here, a California state court has issued

a reasoned decision denying a habeas petitioner's sufficiency of the evidence claim, AEDPA

requires this Court to "apply the standards of <u>Jackson</u> with an additional layer of deference."

<u>Id</u>.  The Court must ask "whether the decision of the California Court of Appeal reflected an

unreasonable application of <u>Jackson</u> and <u>Winship</u> to the facts of this case."  <u>Id.</u> at 1275

(internal quotation marks and citations omitted).

### 2.    The State Court Reasonably Denied Petitioner's Insufficiency Of The Evidence Claim

      Petitioner contends that there was insufficient evidence to support his conviction for

attempted murder.  He argues that the evidence showed only that he intended to rape the

victim, but did not intend to murder her.  (Pet. at 5, Attachment at 1-5.)  Petitioner's

argument fails because a rational trier of fact reasonably could find true on the evidence in

this case that Petitioner intended to kill the victim.  Petitioner seeks to have this Court

reweigh the evidence to reach a different result than the jury did.  AEDPA does not permit

such an exercise on federal habeas review.

      Although sufficiency of the evidence is grounded in the Fourteenth Amendment, a

federal court must refer to the substantive elements of the criminal offense as defined by

state law to determine what evidence is necessary to convict on the crime charged.

<u>Jackson</u>, 443 U.S. at 324 n.16; <u>Juan H.</u>, 408 F.3d at 1275.  Under California law,

"[a]ttempted murder requires the specific intent to kill and the commission of a direct but

1  ineffectual act toward accomplishing the intended killing." People v. Lee, 31 Cal.4th 613,

2  623 (2003); People v. Smith, 37 Cal.4th 733, 739 (2005).  Intent to kill may be "inferred from

3  the defendant's acts and the circumstances of the crime." Smith, 37 Cal.4th at 741.

4      Here, the prosecutor offered ample evidence to support a finding that Petitioner

5  intended to kill the victim.  Petitioner violently attacked and beat the victim, choked her, and

6  expressly declared that if she did not "shut up," he would kill her.  (3RT at 627, 657.)  No

7  more was required to establish attempted murder.  See, e.g., Boyer v. Belleque, 659 F.3d

8  957, 964 (9th Cir. 2011) (review of sufficiency of the evidence of attempted murder requires

9  deference to state court's resolution).  Viewing the evidence in the light most favorable to

10  the prosecution, a rational trier of fact reasonably could have found that Petitioner had the

11  specific intent to kill the victim.  Jackson, 443 U.S. at 319, 324.  That Petitioner is able to

12  point to evidence that would support his defense that he only intended to rape the victim,

13  not kill her, does not mean that the evidence was insufficient to support his conviction for

14  attempted murder.  This Court must presume that the jury, which reviewed all the evidence

15  cited by Petitioner, resolved any conflicting inferences in favor of the prosecution.  Jackson,

16  443 U.S. at 326.

17      The Court of Appeal decision rejecting Petitioner's sufficiency of the evidence claim is

18  not contrary to or an objectively unreasonable application of Jackson and Winship.

19  **C.    Ineffective Assistance of Counsel**

20      Petitioner claims that trial counsel was ineffective by conceding during closing

21  argument that Petitioner had committed attempted murder.  (Pet. at 5; Attachment at 5-6.)

22  The Court of Appeal's rejection of this claim was not contrary to or an unreasonable

23  application of clearly established federal law.

24      **1.    Applicable Federal Law**

25      The Sixth Amendment guarantees a state criminal defendant the right to effective

26  assistance of counsel at trial.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  For

27  Petitioner to prevail on his ineffective assistance of counsel claim, he must satisfy a two-

28  prong test: (1) he must show that counsel's performance was deficient, and (2) he must

1    show that he was prejudiced by the deficient performance.  Id. at 687.  A court evaluating an

2    ineffective assistance of counsel claim does not need to address both components of the

3    test if the petitioner cannot sufficiently prove one of them.  Id. at 697; see also Thomas v.

4    Borg, 159 F.3d 1147, 1151-52 (9th Cir. 1998).

5          To prove deficient performance, a petitioner must show that counsel's representation

6    fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 687-88.  Judicial

7    scrutiny of counsel's performance is "highly deferential."  Id. at 689.  Because of the

8    difficulty in evaluating counsel's performance, there is a "strong presumption that counsel's

9    conduct falls within the wide range of reasonable professional assistance."  Id.  Only if

10   counsel's acts or omissions, examined in light of all the surrounding circumstances, fell

11   outside this "wide range" of professionally competent assistance, will the petition prove

12   deficient performance.  Id. at 690; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

13   (9th Cir. 1995).  The petitioner must overcome the "strong" presumption that, under the

14   circumstances, the challenged action "might be considered sound trial strategy."  Strickland,

15   466 U.S. at 689.

16         Establishing counsel's deficient performance does not warrant setting aside the

17   judgment if the error had no effect on the judgment.  Id. at 691; see also Seidel v. Merkle,

18   146 F.3d 750, 757 (9th Cir. 1998).  A petitioner also must show prejudice such that there is

19   a reasonable probability that, but for counsel's unprofessional errors, the result would have

20   been different.  Strickland, 466 U.S. at 694.  A reasonable probability is a probability

21   sufficient to undermine confidence in the outcome.  Id.  Thus, the petitioner will prevail only

22   if he can prove that counsel's errors resulted in a "proceeding [that] was fundamentally

23   unfair or unreliable."  Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

24         **2.**     **The State Court Reasonably Denied Petitioner's Ineffective**

25         **Assistance of Counsel Claim**

26         The California Court of Appeal considered and reasonably rejected this claim on the

27   merits.  There was overwhelming evidence that Petitioner was guilty of serious violent

28   crimes, including attempted murder.  The evidence was uncontroverted that Petitioner beat

and choked the victim and repeatedly threatened to kill her.  (3RT at 627, 657.)  Counsel attempted to gain credibility with the jury and mitigate his client's exposure by foregoing an extremely weak defense on the attempted murder charge and focusing instead on obtaining an acquittal on the most serious charge of assault with intent to commit rape during the commission of a burglary, which carried a life term.  (See LD 6 at 11.)  This was a reasonable tactical choice that precludes a finding of ineffective assistance of counsel.  See Yarborough v. Gentry, 540 U.S. at 9 (concessions may be warranted and not ineffective assistance of counsel because "counsel might have built credibility with the jury and persuaded it to focus on the relevant issues in the case."); United States v. Swanson, 943 F.2d 1070, 1075-76 (9th Cir. 1991) ("in some cases a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges."); Wade v. Calderon, 29 F.3d 1312, 1319 (9th Cir. 1994) (counsel's comments regarding horrible nature of crime not ineffective assistance because counsel used tactic to focus jury on lack of intent to kill).

Petitioner has failed to establish that his counsel's performance fell below an objective standard of reasonableness or that he suffered prejudice.  The Court of Appeal did not act contrary to Strickland or unreasonably apply it in rejecting Petitioner's ineffective assistance of counsel claim.  Petitioner is not entitled to habeas relief on this claim.

## ORDER

Petitioner is not entitled to relief on the claims in his Petition.

Accordingly, IT IS HEREBY ORDERED that the Petition is denied, and Judgment shall be entered dismissing this action with prejudice.

DATED: August 15, 2012 

_/s/John E. McDermott_
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE

15